UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————

SHERRY C.,

               Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

———————————————————————

**DECISION AND ORDER**

20-CV-911S

    1.    Plaintiff Sherry C.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for supplemental security income under Title XVI of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g). This is the third time Plaintiff sought judicial review for this application (R.[2] at 587, 959).

    2.    Plaintiff protectively filed her application with the Social Security Administration on April 23, 2009.  Plaintiff initially alleged disability beginning June 30, 2001, due to psychosis, depression, anxiety, lower back pain, dizziness, and memory difficulties (R. at 147, 960), Sherry [C.] v. Saul, No. 17CV1321, 2019 WL 2590606, at *1 (W.D.N.Y. June 25, 2019) (McCarthy, Mag. J.).  Plaintiff's application was denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1]In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.  This includes recasting the captions from earlier decisions involving this Plaintiff.

[2]Citations to the underlying administrative record are designated as "R."

3.      On February 7, 2011, ALJ William Weir held a hearing at which Plaintiff—represented by counsel—appeared and testified.  (R. at 29-56, 540-64, 987-1011, 879.) At the time of the hearing, Plaintiff was 48 years old and had a ninth-grade education and a GED (R. at 153).   The ALJ initially found that she had past relevant work as a dishwasher (R. at 23).

4.      The ALJ considered the case *de novo* and, on May 25, 2011, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed her first action, challenging the Commissioner's decision.  This action resulted in a Decision and Order issued by Hon. Michael A. Telesca, dated April 16, 2015, remanding the case for further proceedings (R. at 587-606), Sherry [C.] v. Colvin, No. 12CV114, 2015 WL 1735089 (W.D.N.Y. Apr. 16, 2015).

5.      On October 5, 2015, the Appeals Council vacated the ALJ's 2011 decision and directed further administrative proceedings consistent with Judge Telesca's Decision (R. at 607).

6.      The ALJ conducted a second administrative hearing on April 21, 2017 (R. at 509-39, 1012-42).   On October 5, 2017, the ALJ issued another decision denying Plaintiff's claim for benefits (R. at 488).  Plaintiff filed a second action.  This second action resulted in a Decision and Order issued by Hon. Jeremiah McCarthy, dated June 25, 2019, again remanding the case for further administrative proceedings (R. at 959-81), Sherry [C.] v. Saul, supra, 2019 WL 2590606.

7.     On November 7, 2019, the Appeals Council vacated the ALJ's 2017 decision and directed further proceedings consistent with Magistrate Judge McCarthy's Decision (R. at 983).

8.     On April 2, 2020, the ALJ (now Stephen Cordovani) conducted a third administrative hearing on this claim by teleconference with Plaintiff (represented by counsel) and vocational expert Kenneth Smith appeared and testified (R. at 907-34).  On April 21, 2020, this ALJ issued his decision denying Plaintiff's claim for benefits (R. at 879).

9.     After this third ALJ decision, Plaintiff filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

10.    Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 15, 17.)  Plaintiff filed a response on September 24, 2021 (Docket No. 18), at which time this Court took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion is **granted**, and Defendant's Motion is **denied**.

11.    A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a

---

[3]The ALJ's April 21, 2020, decision became the Commissioner's final decision on this matter by operation of 42 U.S.C. §§ 405(g), 1383(c)(3).

reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

12.    "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

13.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. § 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

14.    The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If [s]he is not,

4

> the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work.  Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

15.     Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

16.     Both ALJs analyzed Plaintiff's claim for benefits under the process set forth above.  At Step One on the current remand, ALJ Cordovani found that Plaintiff has not engaged in substantial gainful activity since April 23, 2009, and did not have relevant

work.  (R. at 883, 895.)  At Step Two, ALJ Cordovani found that Plaintiff had the following severe impairments:   major depressive disorder with psychotic features and anxiety disorder.  Id. at 883.  At Step Three, ALJ Cordovani found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 883-86.

17.    Next, ALJ Cordovani found that Plaintiff retained the residual functional capacity ("RFC") to perform full range of work with nonexertional limitations.  Plaintiff can understand, remember, and carry out simple instructions and tasks.  Plaintiff can work in a low-stress work environment reflected by simple, unskilled work with no supervisory duties, with no independent decision-making requirements, with no strict production quotas, minimal changes in work routine and processes, and no requirement for unfamiliar travel.  Plaintiff can endure occasional interaction with supervisors, co-workers, and the public.  Plaintiff cannot participate in work requiring team, tandem or codependent work.  (R. at 886.)

18.    At Step Four, ALJ Cordovani found Plaintiff had no past relevant work.  (R. at 895.)  At Step Five, ALJ Cordovani found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.   Given the additional limitations to her ability to work at any exertional level, the vocational expert opined that a hypothetical claimant with Plaintiff's age, education, work experience, and RFC could perform such occupations as cleaner (heavy exertional level), dining room attendant (medium), and kitchen helper (medium) (R. at 896-97.)  Accordingly, the ALJ found that Plaintiff is not disabled.  (R. at 897.)

19.     Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ disregarded the direction from the last remand and did not assess the opinions of treating psychiatrists Drs. Richard Wolin and Alfred Belen.

20.     Plaintiff argues that the ALJ failed to give these opinions controlling weight and did not give good reasons for giving them less than controlling weight (Docket No. 15, Pl. Memo. at 23).  For the reasons that follow, this Court accepts Plaintiff's arguments.

21.     On this remand, the ALJ was instructed to evaluate the opinions of Drs. Wolin and Belen (R. at 969-70, 979-80, 983, 879).

22.     Drs. Wolin and Belen were Plaintiff's treating psychiatrists during the relevant period (R. at 887, 888-95).  After Horizon Health Services' Dr. Belito Arana evaluated Plaintiff for psychiatric medication management (R. at 286-87; see R. at 887), Dr. Richard Wolin of Horizon Health Services on May 19, 2009, completed in a "Medical Assessment of Ability to Do Work-Related Activities (Mental)" of Plaintiff.  There, Dr. Wolin reported that Plaintiff had poor abilities to make occupational adjustments over most of the eight listed factors, poor abilities for two factors in making personal-social adjustments and fair for two other factors (R. at 283-84, 963, 975; Docket No. 15, Pl. Memo. at 7-8). Dr. Wolin reported that Plaintiff would have a poor ability to follow work rules, relate to coworkers, deal with the public, use judgment, interact with supervisor, and maintain attention/concentration (R. at 283, 963, 975).  Plaintiff would have no ability to deal with work stress or functioning independently (R. at 284, 963, 975).

23.     The ALJ only gave some weight to this opinion because it was inconsistent with the evidence (R. at 893).

7

24.     On March 2, 2010, Horizon Health reported that Plaintiff still heard hallucinatory voices, but the frequency had subsided (R. at 447, 964, 976).  On April 27, 2010, Dr. Wolin reported that Plaintiff experienced auditory hallucinations over the winter of 2009-10, but she is "quite stable" (R. at 445, 964, 976).  On June 28, 2010, Plaintiff reported that her hallucinations had decreased to once a week (R. at 475, 964, 976).  By August 17, 2010, Plaintiff reported that the auditory hallucinations had "largely obviated" (R. at 473, 711, 964, 976, 888).  In December 2010, Dr. Wolin noted that Plaintiff had "very transient auditory hallucinations" (R. at 715, 964, 976, 888).  Her mood was slightly elevated, but she was stable and did not express "lethality" (R. at 715, 964, 976).

25.     On August 7, 2012, Dr. Wolin reported the return of auditory hallucinations (R. at 727, 964, 976), which improved and was "almost completely remitted" on September 18, 2012 (R. at 731, 964, 976).

26.     On December 23, 2013, Dr. Wolin stated his concern "about how the [plaintiff] is dealing with things" and she had an increase in the intensity of her depression (R. at 742, 964, 976).  The ALJ observed that in August 2013 that Plaintiff was stable (R. at 742, 888).  Dr. Wolin encouraged Plaintiff to have frequent counseling sessions (R. at 744, 865), but due to insurance coverage issues, Plaintiff stopped treatment with Dr. Wolin in 2014 (R. at 965, 976), Sherry [C.], supra, 2019 WL 2590606, at *4.

27.     Plaintiff's primary physician's office reported, on July 21, 2014, that Plaintiff had trouble with focus and concentration (R. at 763, 965, 977).  In 2015, Dr. Belen began treating Plaintiff (R. at 766, 965, 977, 889).  Plaintiff continued to report suffering from depression and having difficulty concentrating (R. at 705, 766, 774, 782, 965, 977).  Her hallucinations subsided in 2015 but returned the next year  (R. at 820, 965, 977).

Dr. Belen diagnosed Plaintiff as suffering from mood disorder (ruling out psychosis), anxiety disorder, and paranoia (R. at 775, 784, 822, 837, 846, 849, 965, 977).

28.     In August 2016, Dr. Belen opined in a "Medical Source Statement" that Plaintiff had marked limitations (serious limitations) in five areas in her ability to understand, remember, and carry out instructions and in four areas for interacting appropriately with supervisors, co-workers, and the public (R. at 799-800; Docket No. 15, Pl. Memo. at 9).  Dr. Belen also noted Plaintiff's ability to interpret reality was affected by possible paranoia (R. at 800; Docket No. 15, Pl. Memo. at 9).

29.     In May 2017, Dr. Belen again evaluated Plaintiff in a "Mental Health Treating Medical Source Statement" (R. 871-75).   Dr. Belen diagnosed Plaintiff with a mood disorder and found her current GAF score was 65 (R. at 871).   Plaintiff in the past had mood instability to the point of paranoia (R. at 871).  Dr. Belen found that Plaintiff's ability to make occupational adjustments in eight categories was poor (R. at 873).  Factors for her ability to make performance adjustments and make personal-social adjustments also were poor (R. at 874).  (See Docket No. 15, Pl. Memo. at 10-11.)

30.     Plaintiff testified that she stopped treatment at Horizon Health in April 2020 (R. at 889).

31.     The ALJ gave only some weight to Drs. Wolin and Belen opinions, concluding that Dr. Wolin's opinion was inconsistent with the evidence as a whole and (R. at 893, 894, 895; Docket No. 17, Def. Memo. at 7).  The ALJ found that Plaintiff's daily activities contradicted Dr. Wolin's opinion (R. at 893; Docket No. 17, Def. Memo. at 7). The ALJ then concludes that Dr. Belen's opinion was inconsistent with the opinions of consultative examiners (R. at 894-95).

32.     Defendant concedes that the ALJ did not assign weight to Dr. Belen's opinions (cf. Docket No. 15, Pl. Memo. at 26; R. at 894-95) but argues that the ALJ did not intend to assign controlling weight to Dr. Belen's opinions (Docket No. 17, Def. Memo. at 8).  Defendant also does not defend the ALJ's statement that Dr. Belen's opinions were inconsistent with other consultative opinions (id. at 8-9; R. at 895).  Instead, Defendant notes that the ALJ observed Dr. Belen's one-year treatment history in 2016 (R. at 894; Docket No. 17, Def. Memo. at 9).  Defendant then reviewed the ALJ's findings which point to the mild mental status examination of Plaintiff and minimal symptomology observed in Dr. Belen's opinion, concluding that the apparent disregard for the doctor's opinion was appropriate (Docket No. 17, Def. Memo. at 9; R. at 894, 872).  Defendant argues that remand to obtain a formal weighing of Dr. Belen's opinion is unnecessary (Docket No. 17, Def. Memo. at 8).

33.     On remand, the ALJ gave Dr. Wolin's opinion partial weight due to inconsistency with the rest of the evidence (R. at 893).  The opinion was rendered at the beginning of the doctor's treatment of Plaintiff (R. at 893).  The ALJ accepted this opinion based upon the longitudinal treatment after the opinion that revealed mild mental status examination findings, noting that she was stable when compliant with medication (R. at 893).

34.     The ALJ discounts the medical source statements from Dr. Wolin and Dr. Belen because they were check box forms (R. at 893, 894).

35.     Both sides cite cases within this Circuit (including from this Court, Cory S. v. Comm'r, No. 19CV6608, 2021 WL 508082, at *6 (W.D.N.Y. Feb. 11, 2021) (Skretny, J.) (Docket No. 15, Pl. Memo. at 23-24)) that differ on the acceptability of check box forms

from treating physicians reporting their opinions.  As found in <u>Cory S.</u>, <u>supra</u>, 2021 WL 508082, at *6, and the cases cited therein, doctors may use those forms to express their opinions of a claimant's condition.

36.     Reliance on such forms for medical opinions have been rejected, however, where the forms merely "offer little or nothing with regard to clinical findings and diagnostic results" or are inconsistent with findings in the doctor's own notes, <u>Heaman v. Berryhill</u>, 765 F. App'x 498, 501 (2d Cir. 2019) (summary Order); <u>Halloran v. Barnhart</u>, 362 F.3d 28, 31 n.2 (2d Cir. 2004) (standardized form held only marginally useful, critiquing the form) (Docket No. 17, Def. Memo. at 5).  Mere use of a check box form provides a "good reason" for giving the treating physician's opinions less weight, <u>Heaman</u>, <u>supra</u>, 765 F. App'x at 501 (citing <u>Schaal v. Apfel</u>, 134 F.3d 496, 505 (2d Cir. 1998)).

37.     In <u>Halloran</u>, the Second Circuit held that the ALJ's opinion denied benefits without possibly developing the administrative record and failed to apply the treating physician rule despite the check box form by a treating physician, 362 F.3d at 31-32. Thus, that case did not turn on whether the doctor used a check box form.

38.     In this case, Drs. Wolin and Belen submitted more than check box forms indicating their opinions.

39.     While the ALJ dismissed both doctors' opinions, he failed to note the consistency of these opinions with each other despite being separated by seven years, as observed by Magistrate Judge McCarthy in remanding this case (R. at 971, 980), <u>Sherry [C.]</u>, <u>supra</u>, 2019 WL 2590606, at *7.

40.     Discussing Plaintiff's daily activities, the ALJ noted that Plaintiff had "extensive" activities, including driving her daughter to work, caring for two dogs for some

months, caring for a grandchild, and volunteering at bingo and Dingus Day celebrations (R. at 891).  It was not clear how frequently Plaintiff performed these daily activities.  As Plaintiff replies (Docket No. 18, Pl. Reply Memo. at 2), it is also unclear how these simple and apparently sporadic activities are commensurate with performing substantial gainful activity.  The ALJ did not cite to an activity that is inconsistent with Dr. Wolin's opinion. See Moscatello v. Saul, No. 18-CV-01395 (BCM), 2019 WL 4673432, at *15 (S.D.N.Y. Sept. 25, 2019) (id. at 2-3).

41.    On the one hand, the ALJ could disregard Dr. Wolin's ultimate finding that Plaintiff was disabled (in response to the form question, R. at 284, 893).  The ultimate finding of disability is reserved to the Commissioner, 20 C.F.R. § 416.927(d).

42.    On the other hand, regarding the subsequent longitudinal medical evidence (R. at 893), Plaintiff claims that Dr. Wolin conducted an initial assessment in November 2008 (R. at 286; Docket No. 15, Pl. Memo. at 13) but the Horizon Health Services assessment was performed by Dr. Arana (R. at 287, 593, 962).  Since Dr. Wolin also worked at Horizon, the 2008 findings can be attributed to Dr. Wolin as background for his 2009 opinion.

43.    The ALJ generally refers to the subsequent longitudinal record with mild findings to refute reliance upon Dr. Wolin's 2009 opinion (R. at 893), but he does not cite the medical evidence of this treatment.  Defendant fills this gap by providing record references to Plaintiff's care, arguing that these references were made elsewhere in the decision (Docket No. 17, Def. Memo. at 7 (citing Administrative Record)).  While the ALJ did not need to repeat the references to the record, the ALJ needed to discuss how those references were inconsistent with Dr. Wolin's earlier opinion.

44.     The ALJ failed to give good reason for the diminished valuation of Dr. Wolin's opinion (see Docket No. 15, Pl. Memo. at 24-25).  Thus, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 15) on this ground is granted.

45.     As for Dr. Belen's opinion, the ALJ did not state the weight given for that opinion, as conceded by Defendant (Docket No. 17, Def. Memo. at 8; see Docket No. 15, Pl. Memo. at 26).   Defendant now argues that the ALJ apparently did not assign controlling weight to Dr. Belen's opinion, so remand "for an actual assignment of weight is unnecessary" (Docket No. 17, Def. Memo. at 8).

46.     Defendant then provides justifications for the ALJ's lack of consideration of Dr. Belen's opinion (id. at 9-10).

47.     Defendant's approach is not helpful for judicial review, Estrella v. Berryhill, 925 F.3d 90, 95 (2d Cir. 2019), especially where the case was remanded for consideration of those opinions.  This Court relies upon the weighing of treating physician's opinions.

48.     A preliminary procedural error is an ALJ failing to expressly find the weight given to a treating physician's opinion.  As when the ALJ fails to provide good reasons for weighting the opinion, this Court is unable to conclude that the weight given by the ALJ is harmless.  Therefore, the case is remanded for the ALJ "to 'comprehensively set forth [its] reasons,'" id. at 96 (quoting Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004)).

49.     The ALJ needs to express the weight given for that opinion before judicial review can occur.

50.     Given the remand to evaluate Dr. Wolin's opinion, the ALJ also can express the weight given to Dr. Belen's opinion.

51.     The ALJ erred in not expressing an evaluation of Dr. Belen's opinion, 20 C.F.R. § 416.927(c)(2); <u>Estrella</u>, <u>supra</u>, 925 F.3d at 95; <u>see also</u> <u>Donald J. v. Comm'r</u>, No. 19CV1621, 2021 WL 71166, at *3 (W.D.N.Y. Jan. 8, 2021) (Geraci, C.J.) (ALJ "must provide a more detailed discussion regarding why the physician's opinion is inconsistent than what was provided") (Docket No. 15, Pl. Memo. at 25).

52.     This Court now need not determine whether the ALJ properly weighed Dr. Belen's opinion until the ALJ expressly does so.  This Court remands this case for the ALJ to weigh Dr. Belen's opinion and apply the appropriate factors if less than controlling weight is applied.  Plaintiff's Motion (Docket No. 15) on this ground is granted.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 15) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 17) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:          March 23, 2022
                Buffalo, New York


                                    s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                    United States District Judge

14